**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------------------------x

JORGE ORTIZ,

Plaintiff,

-against-

JSAML INC. d/b/a TRATTORIA 632, and
ANTHONY MANGONE, individually,

Defendants.

---------------------------------------------------------------------------------------------x

Case No. 26 Civ. ________ (___)

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Jorge Ortiz ("Plaintiff" or "Ortiz"), by and through his attorneys, Stillman Legal, P.C., for his Complaint against Defendants JSAML Inc. d/b/a Trattoria 632 ("JSAML" or the "Corporate Defendant") and Anthony Mangone ("Mangone," and together with JSAML, "Defendants"), alleges, upon personal knowledge as to himself and his own acts and observations, and upon information and belief as to all other matters, as follows:

## I. NATURE OF THE ACTION

1. This is an individual action to recover unpaid overtime compensation pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. (the "FLSA") and the New York Labor Law (the "NYLL"); unpaid minimum wages, unpaid spread-of-hours pay, and statutory damages pursuant to the NYLL and the New York Hospitality Industry Wage Order, 12 N.Y.C.R.R. Part 146 (the "Hospitality Wage Order"); and liquidated damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

2. From on or about February 27, 2023 until on or about March 22, 2026, Plaintiff worked as a server ("mesero") at Trattoria 632, a full-service restaurant located at 632 Anderson

Hill Road, Purchase, Westchester County, New York, which is owned and operated by Defendant JSAML Inc.

3. Throughout his employment, Plaintiff regularly worked well in excess of forty (40) hours per week — generally more than fifty (50) hours per week, and approximately fifty-five (55) to sixty (60) hours per week during busy periods — in shifts that frequently spanned twelve (12) or more hours from beginning to end.

4. Regardless of the number of hours Plaintiff actually worked, Defendants paid him for exactly forty (40) hours each week, at a straight-time cash hourly rate that was itself below the minimum hourly rates required by New York law for his position. Defendants never paid Plaintiff an overtime premium for hours worked beyond forty (40) in a workweek; indeed, Defendants paid Plaintiff nothing at all for those hours.

5. Although Defendants treated Plaintiff as a tipped employee, they never provided him with the written notices required by the NYLL and the Hospitality Wage Order as a precondition to taking any tip credit, and they consequently were not entitled to credit any portion of Plaintiff's tips against their minimum wage or overtime obligations. In any event, the cash wages Defendants actually paid Plaintiff were below even the reduced cash wage permitted for tipped food service workers in Westchester County during the relevant period.

6. Defendants' payroll records uniformly reported forty (40.00) hours of work per week and a fixed weekly "Tips" figure, without regard to the hours Plaintiff actually worked or the tips he actually received, thereby understating the wages owed to Plaintiff and concealing and perpetuating the underpayments alleged herein.

7. Plaintiff accordingly seeks unpaid overtime compensation under the FLSA and the NYLL; unpaid minimum wages and spread-of-hours pay under the NYLL and the

Hospitality Wage Order; statutory damages under NYLL §§ 198(1-b) and 198(1-d); liquidated damages; interest; and reasonable attorneys' fees and costs.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9. This Court has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same employment relationship, the same pay practices, and the same common nucleus of operative fact as Plaintiff's FLSA claims, and form part of the same case or controversy.

10. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District: the restaurant at which Plaintiff worked is located in Purchase, Westchester County, New York, within this District; Plaintiff performed his work there; and the unlawful pay practices alleged herein were carried out there.

## III. THE PARTIES

### A. Plaintiff Jorge Ortiz

12. Plaintiff Jorge Ortiz is an adult individual residing in **Queens, NY.**

13. Defendants employed Plaintiff as a server at Trattoria 632 from on or about February 27, 2023 — the hire date reflected in Defendants' own payroll records — until on or about March 22, 2026.

14. At all relevant times, Plaintiff was Defendants' "employee" within the meaning of 29 U.S.C. § 203(e)(1) and NYLL §§ 190(2) and 651(5), and was a "food service worker" within the meaning of 12 N.Y.C.R.R. § 146-3.4. Plaintiff was a non-exempt employee, and no exemption from the minimum wage or overtime requirements of the FLSA or the NYLL applied to his work.

15. To the extent required for this individual action, Plaintiff's written consent to sue pursuant to 29 U.S.C. § 216(b) is filed herewith.

**B. Defendant JSAML Inc. d/b/a Trattoria 632**

16. Upon information and belief, Defendant JSAML Inc. is a domestic business corporation organized and existing under the laws of the State of New York, with its principal place of business at 632 Anderson Hill Road, Purchase, New York 10577.

17. At all relevant times, JSAML has owned and operated a full-service restaurant doing business under the trade name "Trattoria 632" at 632 Anderson Hill Road, Purchase, New York 10577.

18. JSAML Inc. is identified as Plaintiff's employer — at the same 632 Anderson Hill Road address as the restaurant — on the paystubs issued to Plaintiff with his weekly payroll checks.

19. At all relevant times, JSAML was Plaintiff's "employer" within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190(3) and 651(6), and employed Plaintiff at the restaurant.

20. At all relevant times, JSAML was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A), in that it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that had been moved in or

produced for commerce — including, among other things, foods, beverages, wines and spirits, and restaurant equipment and supplies originating outside the State of New York — and in that it processed payments through interstate credit-card and banking networks. In addition, Plaintiff was individually engaged in commerce within the meaning of 29 U.S.C. 206(a) and 207(a)(1), in that he regularly handled, served, and sold such interstate goods and regularly processed customer payments through interstate credit-card networks.

21. Upon information and belief, JSAML's annual gross volume of sales made or business done was not less than $500,000 during each relevant year. JSAML operated a full-service restaurant in Westchester County offering lunch and dinner table service, hosted private parties and special events, remained in continuous operation throughout the relevant period, and, on busy days, staffed approximately sixteen to seventeen employees, including kitchen staff, a dishwasher, servers, bussers, runners, managers, and delivery drivers.

**C. Defendant Anthony Mangone**

22. Defendant Anthony Mangone is an adult individual who, upon information and belief, resides in Westchester County, New York.

23. Upon information and belief, Mangone is an owner, principal, officer, and/or shareholder of JSAML Inc.

24. Mangone was regularly present at Trattoria 632 and exercised operational control over the restaurant. Among other things, Plaintiff personally observed Mangone supervising the dining room and exercising ultimate authority over significant customer and service matters, including one incident in which Mangone personally intervened in a dispute involving customers who had mistreated Plaintiff, directed the customers to leave the restaurant, and offered to cover their check.

25. Employees at the restaurant, including Plaintiff, understood Mangone to be the owner of the restaurant and its ultimate decision-maker with respect to the terms and conditions of their employment. When Plaintiff was removed from the work schedule at the end of his employment, he sought a meeting with Mangone concerning his employment precisely because of Mangone's authority over such decisions.

26. Upon information and belief, at all relevant times Mangone had and exercised the power to hire and fire employees of the restaurant, to supervise and control employees' work schedules and conditions of employment, to determine or effectively control the rate and method of payment of employees' wages - including the uniform forty-hour payroll practice alleged herein - and to maintain employment records.

27. By virtue of the foregoing, Mangone was, at all relevant times, Plaintiff's "employer" within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190(3) and 651(6), and is jointly and severally liable with JSAML for the violations alleged herein.

28. At all relevant times, Defendants jointly employed Plaintiff, acted directly or indirectly in the interest of one another in relation to Plaintiff, and jointly determined, shared control over, and carried out the unlawful pay practices alleged herein.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Duties

29. Defendants hired Plaintiff on or about February 27, 2023 to work as a server at Trattoria 632, and Plaintiff worked there in that capacity until on or about March 22, 2026.

30. Plaintiff's duties consisted of waiting on and serving customers, together with related service tasks, including: cleaning and preparing tables and chairs; checking and cleaning silverware and plates; stocking and maintaining salt, pepper, oils, and related service items;

assisting food runners in bringing food to tables during busy service; assisting bussers in clearing and cleaning tables; and remaining after closing to reconcile checks and receipts and to participate in the nightly distribution of cash tips.

31. Plaintiff's day-to-day work was directed by Defendants' managers, including a manager named Juan Carlos who set and communicated the weekly work schedules, typically by text message.

32. During his employment, Plaintiff had certain periods during which he did not work, including paid vacation periods and approximately one month in or about April 2024 following the death of his mother, and approximately one month in 2025. Plaintiff seeks unpaid wages only for workweeks in which he actually worked.

**B. Plaintiff's Schedule and Hours**

33. Plaintiff generally worked five (5) days per week. During busy periods, Plaintiff often worked six (6) days per week, and in some weeks — because of staffing shortages, coworker illness, private parties, or special events — Plaintiff worked every day of the week.

34. Plaintiff's typical full-day shifts began at approximately 10:00 or 10:30 a.m. and continued until after 10:00 p.m., and often until approximately 11:00 p.m.

35. Saturday shifts commonly continued until approximately 11:30 p.m. or midnight. Sunday shifts typically ran from approximately 10:30 a.m. until approximately 9:00 or 10:00 p.m. Certain shorter evening shifts began at approximately 4:00 p.m. and ended between approximately 10:00 p.m. and midnight.

36. By way of example, in a typical five-day workweek during his employment, Plaintiff worked approximately four full-day shifts of approximately twelve (12) to twelve and one-half (12.5) hours each, together with at least one additional shift, for a total of approximately

fifty (50) to fifty-five (55) hours in that workweek. During busy periods, when Plaintiff worked six or seven days, he worked approximately fifty-five (55) to sixty (60) hours in a workweek.

37. In each workweek in which Plaintiff worked his regular schedule, he worked more than forty (40) hours.

38. Defendants did not provide Plaintiff with any scheduled or bona fide meal period, and never posted or communicated any meal-period policy. Plaintiff ate only when business permitted; on many days he had approximately ten (10) minutes to eat, and on some days he had no meaningful opportunity to eat at all. At all such times Plaintiff remained on duty, on the restaurant's premises, and subject to being called to work, such that all time between the beginning and end of his shifts was compensable working time.

39. Plaintiff's hours varied somewhat from week to week. The precise hours Plaintiff worked in each workweek are reflected in time, scheduling, and payroll records within Defendants' possession, custody, or control.

**C. Defendants' Timekeeping Practices**

40. Upon information and belief, the restaurant used a computerized system that recorded employees' arrival and working time.

41. Defendants did not provide Plaintiff with punch cards, printed time receipts, or copies of his time records at any point during his employment.

42. Notwithstanding the time information captured by the computerized system, Defendants' payroll uniformly credited Plaintiff with exactly forty (40.00) hours per week.

43. Upon information and belief, the restaurant also operated security cameras that recorded the premises and employees' presence during working hours.

**D. Defendants' Pay Practices**

44. Defendants paid Plaintiff weekly, by a payroll check accompanied by a paystub, together with a separate company check for credit-card tips. Cash tips were generally distributed the same night. Defendants did not pay Plaintiff by direct deposit.

45. Defendants paid Plaintiff a straight-time cash hourly rate that was approximately $8.00 to $9.45 per hour throughout his employment. Defendants' payroll records document a rate of $9.45 per hour as of early 2026. The precise rates paid to Plaintiff, and the effective dates of any changes, are reflected in Defendants' payroll records and will be established through discovery.

46. For example, Defendants' paystub for the pay period February 23, 2026 through March 1, 2026 (check dated March 6, 2026) credits Plaintiff with exactly 40.00 "Regular" hours at a rate of $9.45 per hour, for straight-time earnings of $378.00, together with a separate "Tips" line item of $550.00. The paystub contains no overtime line, no overtime hours, and no overtime rate.

47. The year-to-date figures on that same paystub — $3,780.00 in "Regular" earnings and $5,500.00 in "Tips" — are exact multiples of $378.00 and $550.00, reflecting that Defendants credited Plaintiff with exactly 40.00 hours and exactly $550.00 in reported tips in every pay period of 2026.

48. During those same weeks in early 2026, Plaintiff was in fact regularly working approximately fifty (50) to fifty-five (55) or more hours per week.

49. Every paystub Plaintiff received during his employment reflected forty (40) hours of work. No paystub reflected overtime hours, an overtime rate, or an overtime premium, and Defendants never paid Plaintiff an overtime premium.

50. Defendants paid Plaintiff nothing at all — not even straight-time wages — for the hours he worked beyond forty (40) in a workweek.

51. The weekly "Tips" figure reported on Defendants' payroll records was a fixed amount — approximately $500.00 per week during the earlier portion of Plaintiff's employment and approximately $550.00 per week during later periods (including 2026, as documented by Defendants' paystubs) - that did not correspond to the tips Plaintiff actually received, which varied significantly from week to week depending on the season and the volume of business.

52. At closing each night, servers reported their cash and credit-card tips, and tips were pooled among service employees: servers received equal shares; bussers received approximately one-half share; runners received approximately a 0.70 share; and the bar received approximately a 0.30 share. A manager was involved in calculating and administering the credit-card tip amounts, but, upon information and belief, did not receive any share of the tip pool. Defendants paid credit-card tips weekly by a separate company check that did not identify the payment as tips. Cash tips were generally distributed the same night.

53. Plaintiff's reported annual income for 2024 and for 2025 was nearly identical — approximately $48,000 in each year — notwithstanding real variation in his hours and tips from week to week and year to year, consistent with payroll figures driven by fixed formulas rather than by the hours Plaintiff actually worked or the tips he actually received.

**<u>E. The Applicable Minimum Wage Rates and Defendants' Invalid Tip Credit</u>**

54. At all relevant times, the basic minimum hourly wage applicable to employees in Westchester County under NYLL § 652 and 12 N.Y.C.R.R. § 146-1.2 was: $15.00 per hour in 2023; $16.00 per hour effective January 1, 2024; $16.50 per hour effective January 1, 2025; and $17.00 per hour effective January 1, 2026.

55. For tipped “food service workers” in Westchester County, the Hospitality Wage Order, 12 N.Y.C.R.R. § 146-1.3, permitted an employer meeting all statutory and regulatory preconditions to pay a reduced cash wage and to credit a limited amount of tips toward the minimum wage, as follows: in 2023, a cash wage of $10.00 with a maximum tip credit of $5.00; in 2024, a cash wage of $10.65 with a maximum tip credit of $5.35; in 2025, a cash wage of $11.00 with a maximum tip credit of $5.50; and in 2026, a cash wage of $11.35 with a maximum tip credit of $5.65.

56. An employer may take a tip credit against the minimum wage only if, among other preconditions, it has given the employee advance written notice — pursuant to 29 U.S.C. 203(m)(2)(A), 12 N.Y.C.R.R. § 146-2.2, and NYLL § 195(1), in English and in the employee’s primary language — stating, among other things, the employee’s regular and overtime rates of pay and the amount of tip credit to be taken. The employer bears the burden of proving compliance with these requirements, and no tip credit is permitted absent such compliance.

57. Plaintiff’s primary language is Spanish. Defendants never provided Plaintiff with the required tip-credit notice in any language - whether under federal or state law - never informed him that his tips would be credited against Defendants’ minimum wage or overtime obligations, and never explained any tip credit to him. Plaintiff does not recall receiving or signing any document setting forth his rates of pay or any tip credit.

58. Because Defendants failed to satisfy the statutory and regulatory preconditions for taking a tip credit, Defendants were not entitled to any tip credit and were obligated to pay Plaintiff the full applicable minimum wage for all hours worked up to forty (40) per week, and lawful overtime compensation thereafter.

59. In any event, even if Defendants had been entitled to a tip credit — and they were not — the cash wages Defendants actually paid Plaintiff were below even the reduced cash wage required for tipped food service workers: for example, the approximately $8.00 to $9.45 hourly rates paid in 2023 were below the $10.00 cash wage then required; the rates paid in 2024 were below the $10.65 cash wage then required; the rates paid in 2025 were below the $11.00 cash wage then required; and the $9.45 hourly rate Defendants paid in 2026 was below the $11.35 cash wage then required.

60. Tips are the property of the employee pursuant to NYLL § 196-d and 29 U.S.C. § 203(m)(2)(B). Absent a valid tip credit, an employer may not count tips — however they are labeled on payroll records — toward its minimum wage or overtime obligations.

61. In the alternative, to the extent the fixed weekly amounts that Defendants reported and paid as "Tips" (approximately $500.00 or $550.00 per week) constituted remuneration paid by Defendants — for example, fixed house-paid sums or service charges — rather than a distribution of gratuities left by customers, those amounts could not lawfully be treated as "tips" for any tip-credit purpose and would be required to be included in Plaintiff's regular rate of pay for purposes of calculating overtime compensation. Nothing in this alternative theory is intended to concede satisfaction of Defendants' minimum wage obligations, which are addressed in the Third Cause of Action.

**F. Defendants' Failure to Pay Overtime**

62. As alleged above, Plaintiff regularly worked more than forty (40) hours per workweek, and was entitled to overtime compensation at a rate of not less than one and one-half times his regular rate of pay for all hours worked in excess of forty (40) per workweek, pursuant to 29 U.S.C. § 207(a)(1) and 12 N.Y.C.R.R. § 146-1.4.

63. Because Defendants were not entitled to any tip credit, Plaintiff's regular rate of pay for purposes of the NYLL and the Hospitality Wage Order could not lawfully be less than the full applicable minimum wage.

64. Defendants never paid Plaintiff any overtime premium, and paid him no compensation whatsoever for hours worked beyond forty (40) in a workweek.

**G. Defendants' Failure to Pay Spread-of-Hours Pay**

65. On most days that Plaintiff worked — typically four or more days per week — the interval between the beginning and end of his workday exceeded ten (10) hours. For example, a shift from approximately 10:30 a.m. until approximately 11:00 p.m. entails a spread of approximately twelve and one-half (12.5) hours, and Saturday shifts ending at approximately 11:30 p.m. or midnight entail spreads of approximately thirteen (13) hours or more.

66. Under 12 N.Y.C.R.R. § 146-1.6, on each day on which an employee's spread of hours exceeds ten (10), the employee is entitled to one additional hour of pay at the basic minimum hourly rate. This requirement applies to all employees in restaurants, regardless of a given employee's regular rate of pay. 12 N.Y.C.R.R. § 146-1.6(d).

67. Defendants never paid Plaintiff any spread-of-hours pay on any day during his employment.

**H. Defendants' Wage Notice and Wage Statement Violations**

68. Defendants never provided Plaintiff — at the time of hiring or at any time thereafter — with the written wage notice required by NYLL § 195(1) and 12 N.Y.C.R.R. § 146-2.2, in English and in Spanish, Plaintiff's primary language, containing, among other required information: his regular and overtime rates of pay; the basis of his rate of pay; any allowances claimed as part of the minimum wage, including any tip credit; the regular pay day; the

employer's name and any "doing business as" names; and the employer's address and telephone number.

69. Defendants furnished Plaintiff with wage statements accompanying his weekly payroll checks, but those statements were materially false and incomplete within the meaning of NYLL § 195(3) and 12 N.Y.C.R.R. § 146-2.3: they uniformly reported exactly forty (40) hours of work regardless of the hours Plaintiff actually worked; they omitted his overtime hours and any overtime rate; and they failed accurately to state his gross wages and any allowances or tip credit claimed.

70. As a direct result of Defendants' failure to provide the required wage notice and accurate wage statements, Plaintiff was deprived of the very information the Wage Theft Prevention Act guarantees so that employees can verify that they are being lawfully paid: Plaintiff had no way to determine the lawful minimum and overtime rates applicable to him, whether and in what amount Defendants were claiming a tip credit against his wages, or the amounts by which he was being underpaid each week.

71. Because Defendants withheld that information and furnished statements that misstated Plaintiff's hours every week, Defendants' underpayments continued undetected and unremedied week after week throughout Plaintiff's employment, and Plaintiff lost the use of the wages owed to him during that entire period.

72. Defendants' inaccurate records continue to obscure the discrepancy between the hours Plaintiff actually worked and the hours for which he was paid, and impede the identification and computation of the wages owed to him.

## I. Willfulness

73. At all relevant times, Defendants, as operators of a full-service restaurant in New York, knew or should have known of their obligations under the FLSA, the NYLL, and the Hospitality Wage Order, including their minimum wage, overtime, tip-credit-notice, and spread-of-hours obligations.

74. Defendants captured employees' actual time information through a computerized system, yet paid Plaintiff for a flat forty (40) hours every week. Defendants therefore knew, or recklessly disregarded, the discrepancy between the hours Plaintiff actually worked and the hours for which he was paid.

75. The uniformity of Defendants' payroll — exactly 40.00 hours and a fixed "Tips" figure every week, without variation — was not an accident or clerical error, but a deliberate payroll practice.

76. Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a), and Defendants' violations of the NYLL were willful. Defendants did not act in good faith and had no reasonable grounds to believe that their conduct complied with the FLSA or the NYLL, and they are not entitled to any good-faith defense to liquidated damages under 29 U.S.C. § 260 or NYLL §§ 198(1-a) and 663(1).

77. Plaintiff's NYLL claims are subject to a six-year limitations period, NYLL §§ 198(3), 663(3), which encompasses Plaintiff's entire period of employment. Plaintiff's FLSA claims are subject to a three-year limitations period by reason of Defendants' willfulness, 29 U.S.C. § 255(a), reaching back three years from the date of filing.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Unpaid Overtime — Fair Labor Standards Act, 29 U.S.C. § 207 — Against All Defendants)**

78. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

79. At all relevant times, Defendants were employers engaged in commerce or in the production of goods for commerce, and/or constituted an enterprise engaged in commerce, within the meaning of 29 U.S.C. §§ 203(d), 203(s)(1)(A), 206(a), and 207(a), and employed Plaintiff.

80. Pursuant to 29 U.S.C. § 207(a)(1), Defendants were required to pay Plaintiff overtime compensation at a rate of not less than one and one-half times his regular rate of pay for each hour worked in excess of forty (40) hours in a workweek. Because Defendants failed to satisfy the preconditions for a tip credit under 29 U.S.C.  203(m)(2)(A), Plaintiff's regular rate of pay for FLSA purposes could not lawfully be less than the full applicable minimum wage.

81. As alleged above, Plaintiff regularly worked more than forty (40) hours per workweek, and Defendants failed and refused to pay him any overtime compensation — or any compensation at all — for hours worked in excess of forty (40) per workweek.

82. Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a).

83. As a result of Defendants' violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime compensation, an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b), and, in the alternative, prejudgment interest to the extent liquidated damages are not awarded, together with reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**(Unpaid Overtime — New York Labor Law and 12 N.Y.C.R.R. § 146-1.4 — Against All Defendants)**

84. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

85. At all relevant times, Defendants were Plaintiff's employers within the meaning of NYLL §§ 190(3) and 651(6), and Plaintiff was Defendants' employee within the meaning of NYLL §§ 190(2) and 651(5).

86. Pursuant to the NYLL and the Hospitality Wage Order, 12 N.Y.C.R.R. § 146-1.4, Defendants were required to pay Plaintiff overtime compensation at a rate of not less than one and one-half times his regular rate of pay — which, absent a valid tip credit, could not lawfully be less than the full applicable minimum wage — for each hour worked in excess of forty (40) hours in a workweek.

87. Defendants failed and refused to pay Plaintiff any overtime compensation for hours worked in excess of forty (40) per workweek.

88. Defendants' failure to pay overtime was willful and was not in good faith.

89. As a result of Defendants' violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime compensation, liquidated damages equal to one hundred percent of the unpaid overtime pursuant to NYLL §§ 198(1-a) and 663(1), prejudgment interest, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## **THIRD CAUSE OF ACTION**
## **(Unpaid Minimum Wages / Invalid Tip Credit — NYLL § 652 and 12 N.Y.C.R.R. §§ 146-1.2, 146-1.3, 146-2.2 — Against All Defendants)**

90. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

91. At all relevant times, Defendants were required to pay Plaintiff at least the basic minimum hourly wage applicable in Westchester County for each hour worked, pursuant to NYLL § 652 and 12 N.Y.C.R.R. § 146-1.2.

92. Defendants failed to satisfy the preconditions for taking any tip credit against the minimum wage, including the written notice required by 12 N.Y.C.R.R. § 146-2.2 and NYLL § 195(1), and accordingly were not entitled to credit any portion of Plaintiff's tips toward the minimum wage.

93. Defendants paid Plaintiff straight-time cash hourly rates — approximately $8.00 to $9.45, and, as documented for 2026, $9.45 — that were below the full applicable minimum wage at all relevant times, and that were below even the reduced cash wage permitted for tipped food service workers for all or substantially all of the relevant period.

94. Defendants also paid Plaintiff no wages at all for hours worked in excess of forty (40) per workweek.

95. Defendants' failure to pay the minimum wage was willful and was not in good faith.

96. As a result of Defendants' violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid minimum wages, liquidated damages equal to one hundred percent of the unpaid wages pursuant to NYLL §§ 198(1-a) and 663(1), prejudgment interest, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

**<u>FOURTH CAUSE OF ACTION</u>**
**(Unpaid Spread-of-Hours Pay — 12 N.Y.C.R.R. § 146-1.6 — Against All Defendants)**

97. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

98. Pursuant to 12 N.Y.C.R.R. § 146-1.6, Defendants were required to pay Plaintiff one additional hour of pay at the basic minimum hourly rate for each day on which the spread of Plaintiff's hours exceeded ten (10), regardless of Plaintiff's regular rate of pay.

99. As alleged above, the interval between the beginning and end of Plaintiff's workday exceeded ten (10) hours on most days that he worked — typically four or more days per week.

100. Defendants never paid Plaintiff any spread-of-hours pay.

101. Defendants' failure to pay spread-of-hours pay was willful and was not in good faith.

102. As a result of Defendants' violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid spread-of-hours pay, liquidated damages equal to one hundred percent of the unpaid wages pursuant to NYLL §§ 198(1-a) and 663(1), prejudgment interest, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## **FIFTH CAUSE OF ACTION**
## **(Failure to Provide Wage Notice — NYLL § 195(1) — Against All Defendants)**

103. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

104. Defendants failed to provide Plaintiff, within ten (10) business days of the commencement of his employment or at any time thereafter, with the wage notice required by NYLL § 195(1), in English and in Plaintiff's primary language, Spanish, containing his rates of pay, the basis thereof, any allowances or tip credit claimed, the regular pay day, and the employer's name, any doing-business-as names, address, and telephone number.

105. As alleged above, Defendants' failure to provide the required notice deprived Plaintiff of the information necessary to determine his lawful rates of pay and any tip credit being taken against his wages. As a direct and proximate result, Plaintiff was unable to verify whether he was being paid in accordance with the law, was unable to identify or contest the underpayment of his wages in a timely manner, was unable to budget or plan his household finances based on a reliable understanding of his true rate of pay, suffered a loss of financial security, and was impaired in his ability to seek timely legal redress or otherwise enforce his wage rights. Defendants' failure to provide the required notice thereby directly resulted in, concealed, and perpetuated the underpayment of Plaintiff's wages week after week throughout his employment, injuring Plaintiff in the loss and delayed receipt of wages owed to him.

106. Pursuant to NYLL § 198(1-b), Plaintiff is entitled to recover from Defendants, jointly and severally, statutory damages of fifty dollars ($50) for each work day the violation continued, up to a maximum of five thousand dollars ($5,000), together with reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION
## (Failure to Provide Accurate Wage Statements — NYLL § 195(3) — Against All Defendants)

107. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

108. Defendants failed to provide Plaintiff with accurate wage statements with each payment of wages as required by NYLL § 195(3) and 12 N.Y.C.R.R. § 146-2.3. The statements Defendants furnished uniformly misstated Plaintiff's hours as exactly forty (40) per week regardless of the hours he actually worked, omitted his overtime hours and rates, and failed accurately to state his gross wages and any allowances or tip credit claimed.

109. As alleged above, Defendants' inaccurate wage statements omitted Plaintiff's overtime hours, overtime rate, and any tip credit claimed, thereby depriving Plaintiff of the information necessary to determine the lawful rates applicable to him and to identify and contest the underpayment of his wages. Defendants' misstatements directly resulted in and perpetuated the continued underpayment of Plaintiff's wages throughout his employment, injuring Plaintiff in the loss and delayed receipt of wages owed to him. In addition, because Plaintiff could not ascertain from the statements furnished to him the hours he had actually been credited with or the rates at which he was being compensated, he was unable to budget or plan his household finances on the basis of reliable pay information, suffered a loss of financial security, was unable to contest wage discrepancies with Defendants in a timely manner, and was impaired in his ability to enforce his wage rights or seek timely legal redress.

110. Pursuant to NYLL § 198(1-d), Plaintiff is entitled to recover from Defendants, jointly and severally, statutory damages of two hundred fifty dollars ($250) for each work day the violation continued, up to a maximum of five thousand dollars ($5,000), together with reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

(a) Declaring that Defendants violated the FLSA, the NYLL, and the Hospitality Wage Order as alleged herein, that Defendants' violations were willful, and that Defendants are not entitled to any good-faith defense to liquidated damages;

(b) Awarding Plaintiff his unpaid overtime compensation under the FLSA and the NYLL;

(c) Awarding Plaintiff his unpaid minimum wages under the NYLL and the Hospitality Wage Order;

(d) Awarding Plaintiff his unpaid spread-of-hours pay under the Hospitality Wage Order;

(e) Awarding Plaintiff liquidated damages pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198(1-a) and 663(1), in the maximum amount permitted by law;

(f) Awarding Plaintiff statutory damages of five thousand dollars ($5,000) pursuant to NYLL § 198(1-b) and five thousand dollars ($5,000) pursuant to NYLL § 198(1-d);

(g) Awarding Plaintiff prejudgment interest on his NYLL damages pursuant to N.Y. C.P.L.R. §§ 5001 and 5004, and, in the alternative, prejudgment interest on any FLSA damages for which liquidated damages are not awarded;

(h) Awarding Plaintiff post-judgment interest pursuant to 28 U.S.C. § 1961, and providing that any unpaid judgment amount shall automatically increase as provided by NYLL § 198(4);

(i) Awarding Plaintiff his reasonable attorneys' fees and the costs and disbursements of this action pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663; and

(j) Granting such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
[MONTH] ___, 2026

Respectfully submitted,

**STILLMAN LEGAL, P.C.**